FILED

SEP - 6 2023

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) 4:23-cr-00466 MTS |
| KELVIN N. FORD, | ) |
| Defendant. | ) |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Kelvin N. Ford, represented by defense counsel Abraham Copi, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts I (access device fraud) and II (aggravated identity theft) of the Information, the United States agrees that no further federal prosecution will be brought in this District relative to the defendant's theft of a rental vehicle from Alamo Car Rental

1

on December 17, 2022 and possession of fraudulent access devices and identification documents recovered from said vehicle on January 16, 2023, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that, at the time of sentencing, the United States and Defendant will request a sentence of 36 months' imprisonment, consisting of a 12 month sentence as to Count I to run consecutively to a 24 month sentence as to Count II.

The defendant also agrees, pursuant to the guilty plea to Count I, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of his offense of access device fraud and any personal property used or intended to be used to commit the offense.

### 3. ELEMENTS:

#### a. Count I (Access Device Fraud)

As to Count I, the defendant admits to knowingly violating Title 18, United States Code, Section 1029(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant knowingly used unauthorized access devices at any time during a one-year period;

*Two*, by using unauthorized access devices during that period, the defendant obtained anything of value worth $1,000 or more;

*Three*, the defendant acted with intent to defraud; and

2

*Four*, the defendant's conduct in some way affected commerce between one state and another state.

### b. Count II (Aggravated Identity Theft)

*One*, the defendant knowingly possessed or used a means of identification, namely, the name and date of birth of Individual S.E.;

*Two*, the defendant knew that the means of identification belonged to another person;

*Three*, the defendant possessed or used the means of identification without lawful authority;

*Four*, the defendant knew that he possessed or used the means of identification without lawful authority; and

*Five*, the defendant possessed or used the means of identification during and in relation to the crime of Access Device Fraud, in violation of Title 18, United States Code, Section 1029(a)(1).

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On or about December 17, 2022, in Woodson Terrace, Missouri, within the Eastern District of Missouri, Defendant Kelvin N. Ford knowingly used an unauthorized access device with the intent to defraud Alamo Car Rental, and during and in relation to this offense, also knowingly possessed and used a means of identification belonging to another person without lawful authority.

More specifically, on December 17, 2022, Defendant stole a rental vehicle from Alamo Car Rental in Woodson Terrace, Missouri by fraudulently renting the vehicle using a stolen credit card number and assuming a stolen identity. On that date, Defendant walked into the Alamo Car

Rental and rented a 2023 Audi Q3 SUV using the name, date of birth, and address of Individual S.E., a resident of Connecticut. As payment for the rental, Defendant used a stolen credit card number belonging to another person and presented a counterfeit credit card encoded with the same number and bearing the name of Individual S.E. Defendant also presented a counterfeit state of Connecticut driver's license in the name of Individual S.E. The counterfeit driver's license bore the real name, date of birth, and address of Individual S.E. but a picture of Defendant. Based on these fraudulent forms of payment and identification provided by Defendant, Alamo Car Rental rented the Audi Q3 to Defendant. Surveillance footage from Alamo Car Rental captured Defendant presenting the counterfeit credit card and counterfeit driver's license to an attendant at Alamo Car Rental, after which he drove away in the Audi Q3.

Defendant admits that, in using a stolen credit card number as payment, he intended to defraud Alamo Car Rental and that he intended to steal the Audi Q3 and not return the vehicle to Alamo Car Rental. Defendant also admits that he knew that the name and date of birth he used on the counterfeit credit card and counterfeit driver's license belonged to another person and that he knowingly used those means of identification without lawful authority.

After Defendant failed to return the Audi Q3 at the end of the rental period, Alamo Car Rental discovered the credit card number used to pay for the rental was fraudulent and reported the vehicle stolen. On January 16, 2023, the Woodson Terrace Police Department located the Audi Q3 parked outside of a residence in Bridgeton, Missouri and with Defendant sitting in the driver's seat. Officers lawfully searched the vehicle and found multiple access devices, including 3 Green Dot Bank debit cards opened in names of account holders other than Defendant; 1 Vanilla gift card; 2 Target merchandise return cards; 1 Chase Bank debit card in the name of Individual T.K.; and 1 Scott Credit Union debit card in the name of Individual J.R. Defendant admits that these

access devices were either counterfeit or unauthorized, in that they were stolen and obtained with intent to defraud. Officers also found approximately $736.10 in U.S. currency and multiple false identification documents, including 2 fake employee badges for a healthcare company and a fake Missouri temporary driver's license bearing Defendant's picture but the real name and date of birth of Individual M.L.

In particular, Defendant used the identity of Individual J.R. to open a bank account at Scott Credit Union. On December 28, 2022, Defendant entered a Scott Credit Union branch in or around St. Louis, Missouri and provided the real name, social security number, and date of birth of Individual J.R. Based on the stolen information provided by Defendant, Scott Credit Union opened the account and provided the debit card in the name of Individual J.R. to Defendant. Surveillance video from Scott Credit Union captured Defendant conducting this transaction. Defendant admits that he knew that the name, social security number, and date of birth belonged to another person and that he knowingly used those means of identification without lawful authority to obtain another means of identification, namely a bank account number.

The Audi Q3 stolen by Defendant was worth approximately $37,000, and Defendant possessed 8 counterfeit and unauthorized access devices recovered from the vehicle. In total, Defendant's conduct caused a loss of at least $41,000, with each counterfeit and unauthorized access device possessed by Defendant representing $500 in loss.

## 5. STATUTORY PENALTIES:

### a. Count I (Access Device Fraud)

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count I is imprisonment of not more

5

than 10 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

### b. Count II (Aggravated Identity Theft)

The defendant fully understands that the penalty provided by law for the crime to which the defendant is pleading guilty under Count II is a term of imprisonment of 2 years, and that this term of imprisonment shall not run concurrently with any other term of imprisonment imposed.

### 6. U.S. SENTENCING GUIDELINES (2021 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

### a. Chapter 2 Offense Conduct:

**(1) Base Offense Level:** The parties agree that the base offense level is 6, as found in Section 2B1.1(a)(2).

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 6 levels should be added pursuant to Section 2B1.1(b)(1)(D), because the loss exceeds $40,000, but does not exceed $95,000.

The parties agree that 2 levels should be added pursuant to Section 2B1.1(b)(11)(C)(i), because the offense involved the unauthorized use of any means of identification unlawfully to produce or obtain any other means of identification, namely, the unauthorized use of Individual J.R.'s name, date of birth, and social security number to obtain a bank account number in Individual J.R.'s name.

   b. **Chapter 3 Adjustments:**

   **(1) Acceptance of Responsibility:** The parties agree that 2 levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated acceptance of responsibility. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

   c. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 12.

   d. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

   e. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

    **(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above 36 months' imprisonment for appeals taken by the defendant, or below 36 months' imprisonment for appeals taken by the Government.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title

or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

### 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term

of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

### 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

| | |
|---|---|
| 8/4/23<br>Date | JONATHAN A. CLOW<br>Assistant United States Attorney |
| 7-25-23<br>Date | KELVIN N. FORD<br>Defendant |
| 7-25-23<br>Date | ABRAHAM COPI<br>Attorney for Defendant |

13